IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO.
20-13171

L.T. APPEAL NO.
No. 6:19-cr-241-Orl-37DCI

IN RE: VINCE EDWARD LASANE

**Hon. Roy B. Dalton, Jr.**
**U.S. District Judge**
**Middle District of Florida**

-1-

## <u>DISTRICT COURT'S ADDRESS TO THE PETITION FOR WRIT OF MANDUMUS</u>

Petitioner Vince Edward Lasane ("**Lasane**") filed a petition for a writ of mandamus in the Eleventh Circuit ("**Petition**"). The district court was invited to address the Petition. (*See* No. 6:19-cr-241-37DCI, Doc. 73.) This response follows.

## I.    BACKGROUND

Lasane was indicted on November 13, 2019, on one count of attempting to entice a minor to engage in sexual activity and one count of committing a felony offense involving a minor as a registered sex offender. (Petition, pp. 49–52.) Trial was originally slated for January 6, 2020. (No. 6:19-cr-241-37DCI, Doc. 14.) At a status conference on December 19, 2019, Lasane's ore tenus motion to continue was granted and the case set over to the March 2, 2020 trial period. (No. 6:19-cr-241-37DCI, Docs. 24–25.) Following a February 20, 2020 status conference, the trial was scheduled, date certain, for March 2, 2020 at 9:00 a.m. (No. 6:19-cr-241-37DCI, Doc. 26.) The parties prepared for trial, each submitting witness and exhibit lists, proposed voir dire questions, draft jury instructions, and verdict forms. (*See*

No. 6:19-cr-241-37DCI, Docs. 29–40.) Then, four days before trial, the Government filed an emergency motion to continue, representing an essential witness was severely ill. (Petition, pp. 56–59.) After a hearing on February 28, 2020, I continued the trial to March 31, 2020—satisfied the witness was indeed essential and unable to attend due to illness. (*See* No. 6:19-cr-241-37DCI, Docs. 44–45.)

Unfortunately, the world changed between February 28, 2020 and March 31, 2020. The novel coronavirus, COVID-19, which had been flickering in the background in the U.S. in February came roaring into the public consciousness by the end of March.[1] Like much of the United States, the five counties comprising the Orlando Division of the Middle District of Florida felt the impact of COVID-19.[2] Schools closed, sporting events were

---

[1] *See* Robin Muccari, Denise Chow, & Joe Murphy, *Coronavirus Timeline: Tracking the Critical Moments of COVID-19*, NBC News (July 8, 2020), https://www.nbcnews.com/health/health-news/coronavirus-timeline-tracking-critical-moments-covid-19-n1154341.

[2] *See supra* note 1; *see also* Scott Powers, *Orange County Going into Mandatory Stay-at-Home*, Florida Politics (Mar. 25, 2020), https://floridapolitics.com/archives/325027-orange-county-going-into-mandatory-stay-at-home.

canceled, and Orlando went into lockdown.[3] And the operations at the Orlando federal courthouse were not immune to the fears and challenges associated with COVID-19. Courthouse personnel worked diligently to comply with CDC and local health guidelines to provide a safe environment, but early on these efforts were hindered by severe shortages of personal protective equipment ("**PPE**") like face masks, hand sanitizer, and sanitizing wipes. (Exh. A.) Faced with ever-increasing numbers of infection, a lack of available PPE, uncertainty surrounding procedures for handling COVID-19, and a concern for the health of the public, lawyers, litigants, and court personnel, and after consultation with the Clerk of Court and my judicial colleagues, I (as administrative judge for the division) entered an omnibus order encouraging district judges in this division to continue trials and to take actions "as may be lawful and appropriate to ensure the fairness of the proceedings and preserve the rights of the parties." (No. 6:20-mc-17-Orl-37, Doc. 2, ¶ 3.) After considering the facts and circumstances of this case, I entered an order on April 2, 2020, excluding all time until July 31, 2020 from

---

[3] *See supra* notes 1–2.

the speedy trial computation, finding "the interests of justice outweigh the best interests of the public and the Defendant in a speedy trial." (Petition, p. 63.)

Months passed, and the COVID-19 pandemic continues to impact the district and the Orlando division operations, but progress has been made. COVID-19 is now better understood than it was in March, with studies on the efficacy of masks and social distancing, methods of treatment, and risk factors.[4] And since March, the Clerk of Court in the Middle District has worked diligently with suppliers to ensure the availability of necessary PPE, including face masks, hand sanitizing stations, sanitizing wipes, face shields,

---

[4] *See, e.g.*, Boston Children's Hospital, *Advances in Coronavirus Research*, http://www.childrenshospital.org/conditions-and-treatments/conditions/c/coronavirus/research; Shawn Radcliffe, *Here's Exactly Where We Are with Vaccines and Treatments for COVID-19*, Healthline (Aug. 26, 2020), https://www.healthline.com/health-news/heres-exactly-where-were-at-with-vaccines-and-treatments-for-covid-19; Maria Cohut, *Hope in Defeating COVID-19: More Therapeutic and Vaccine Advances*, Medical News Today (Aug. 7, 2020), https://www.medicalnewstoday.com/articles/hope-in-defeating-covid-19-more-therapeutic-and-vaccine-advances; *Masks Save Lives: Duke Study Confirms Which Ones Work Best*, Hartford HealthCare (Aug. 11, 2020), https://hartfordhealthcare.org/about-us/news-press/news-detail?articleid=27691&publicId=395.

and courtroom microphone covers. (Exhs. A–B.) The Court has made building changes, set up temperature scanning machines at the main entrance, required masks inside the building, and installed plexiglass barriers around the witness stands and between courtroom staff who sit in close proximity. (Exhs. A, C–E.) And procedures are in place—including a mandatory mask policy, banning entry to those with a fever, increased cleanings and sanitations, and increased access to telework—to enhance everyone's safety. (Exhs. A, C.)

Specific provisions have been made for safety concerns in jury trials. (*See* Exh. F, pp. 12:25–32:16; *see also* Exhs. C, G–J.) Juror questionnaires were modified to screen prospective jurors who are themselves particularly vulnerable to COVID-19 or live with vulnerable individuals, and letters to jurors explaining the safety measures are now included with the summons. (Exh. F, pp. 22:20–23:14; Exh. H.) Plexiglass dividers are installed in the jury box and the Court provides individual juror bags with hand sanitizer, bottled water, handheld fans, and gloves. (Exhs. B–D, I.) All district judges coordinate their jury trials, so no more than one jury selection starts on the same day, to limit the number of reporting jurors. (Exh. J.) Voir dire will be

conducted in small groups, usually in the large ceremonial courtroom—to allow for social distancing and reduce the need to use courthouse elevators—and the Court installed choir microphones so prospective jurors will not need to share microphones during questioning. (Exh. F, pp. 13:4–17, 31:21–32:6; *see also* Exh. G.) And during trial, jurors will either be spaced out throughout the courtroom or protected by the plexiglass barriers in the jury box, depending on their preference. (Exh. F., pp. 14:25–15:10.) While in the courtroom, face shields and masks (provided by the Court) are required along with social distancing; attorneys and witnesses may be permitted to remove their mask during testimony, examination, and argument, but face shields and the other barriers will remain in place. (*Id.* at 14:21–24, 15:11–20; *see also* Exh. D.) Special headsets are now available to attorneys and the Court that will allow for confidential client discussions and sidebars while maintaining social distancing. (Exh. G.)

After months of dealing with COVID-19 and putting safety measures in place, the Orlando division judges felt equipped to safely resume jury trials. (*See* Exh. J.) On August 31, 2020, Judge Carlos Mendoza of the Orlando division completed voir dire and seated the first jury since the March

suspension. (*See* No. 6:17-cr-291-41DCI; Exh. I.) Judge Mendoza seated thirteen jurors out of a panel of thirty-two: six men and seven women, with three Hispanic jurors, one African American juror, and one Asian American juror, ranging in age from 30 to 60 years old. (Exh. I.) This follows successful jury trials held in other jurisdictions, including the Eleventh Circuit, utilizing many of the same techniques described above.[5] (Exhs. J–L.)

Despite these safety measures, Lasane does not wish to go to trial. He moved for a continuance based on COVID-19. (Petition, pp. 68–74.) He supported his request with a boilerplate affidavit from Eric T. Lofgren, modified for Lasane but identical in all material respects to filings in other cases pending in the division. (*See, e.g.*, No. 6:19-cr-248-41LRH, Doc. 68-1; No. 6:20-cr-89-37LRH, Doc. 23-2.) After discussing the motion at length with the parties at the criminal status conference, I denied the motion, finding his concerns do not outweigh the public's interest in a speedy trial in light of all

---

[5] *See Federal Judges Reinventing the Jury Trial During Pandemic*, United States Courts: Judiciary News (Aug. 27, 2020), https://www.uscourts.gov/news/2020/08/27/federal-judges-reinventing-jury-trial-during-pandemic?utm_campaign=usc-news&utm_medium=email&utm_source=govdelivery.

the established precautions. (Exh. F, pp. 8:3–9:18, 11:16–18.) Lasane's petition for a writ of mandamus followed.[6]

## II.   LEGAL STANDARDS

A writ of mandamus is a "drastic remedy, that must not be used to regulate the trial court's judgment in matters properly left to its sound discretion." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997) (quotation marks and citation omitted). The Court of Appeals "may issue the writ only in drastic situations, when no other adequate means are available to remedy a clear usurpation of power or abuse of discretion." *Id.* (quotation marks and citation omitted).

## III.   LEGAL MEMORANDUM

Lasane contends his motion was denied by endorsed order that "provided no explanation" and "failed to address any of Mr. Lasane's concerns." (Petition, pp. 13, 20.) And "the district court prioritized the trial schedule over the protection of Mr. Lasane, his defense team, courthouse

---

[6] Lasane has also filed a motion for reconsideration, based on a new outbreak of COVID-19 at the jail where Lasane is being held. (No. 6:19-cr-241-37DCI, Doc. 68.) An evidentiary hearing on this motion is set for September 3, 2020. (No. 6:19-cr-241-37DCI, Docs. 72, 74.)

personnel, and the public" and so erred "summarily rejecting" Lasane's request. (*Id.*) Not so. First, while the motion was terminated via a short docket entry, this was only after a relatively lengthy hearing on the subject, where the Court detailed the numerous safety procedures (described above), invited the parties to provide reasonable suggestions, and explained this decision was not made "willy-nilly" but considering both the public's right to the disposition of these charges as well as the Court's constitutional imperative to provide a speedy and public trial. (*See* Exh. F; U.S. Const. amend. VI.) This was not a summary or unexplained denial.

Rather than "prioritize[] the trial schedule," I recognized the public has a constitutional (and statutory) right to a speedy trial and the disposition of these charges. (*See* Petition, p. 13; Exh. F, p. 8:7–20); *see also* 18 U.S.C. § 3161(c)(1); *Zedner v. United States*, 547 U.S. 489, 500–01 (2006). Lasane was indicted in November 2019 and while previous interest of justice findings tolled the speedy trial clock, I balanced the competing interests and found Lasane's latest request a bridge too far. (Petition, p. 50; Exh. F.) It has been nine months since Lasane was indicted—well past the seventy days mandated by the Speedy Trial Act. *See* 18 U.S.C. § 3161(c)(1). Both the

Supreme Court and the Eleventh Circuit have explicitly held the right to a speedy trial is not vested in a defendant alone, nor can a defendant unilaterally waive the right. *See Zedner*, 547 U.S. at 500–01; *United States v. Ammar*, 842 F.3d 1203, 1211 (11th Cir. 2016). "The court must consider both the defendant's interest and the public's interest in a speedy trial." *Ammar*, 842 F.3d at 1211 (citing *Zedner*, 547 U.S. at 501). "The best interests of the parties—and even those of the court—cannot alone justify deviation from [the Speedy Trial Act's] requirements, absent the determination that those interests outweigh the public interest." *Id.* at 1206. At the status hearing, I found that, in light of the numerous safety measures and the significant passage of time from indictment, the interests of the public outweighed Lasane's concerns. (*See* Exh. F, 8:7–20.)

Lasane's assertions notwithstanding, the safety of the parties, counsel, and the public is paramount—no less the safety of courthouse staff (and my own staff), the public, the venire, and witnesses.[7] It was for safety

---

[7] Lasane also fails to explain why he is safer being held in Seminole County Jail awaiting trial versus having trial and either: (1) being released if he is acquitted; or (2) transferred to the jurisdiction of the Bureau of Prisons if he is convicted.

considerations that jury trials were suspended since March 2020, and it is out of a concern for safety that judges in this district and courthouse staff have worked diligently to put in place proper procedures, obtain sufficient PPE, and build plexiglass barriers and the like. I won't recount the list of safety measures detailed above—but suffice to say, the threat of COVID-19 is not being treated lightly.[8] The decision to resume jury trials in the Orlando division was made by all the judges in the division, in consultation with our colleagues throughout this large, diverse district. Lasane offers no metric or criteria to use as a benchmark for proceeding with jury trials, just as he offers no suggestions for improving the safety of the process—he simply says it is not enough.[9]  As mentioned, I am not alone in holding jury trials. Just this

---

[8] Lasane also argues Florida's cases are larger now than they were in March 2020 when Chief Judge Merryday entered a COVID-19 administrative order. (Petition, pp. 17–18.) But recent data shows a decline in Florida COVID-19 cases, as Lasane himself concedes. (Petition, p. 17; *see also* Exh. M); Gabriella Nunez, *COVID-19 cases continue to decline as 6 Central Florida school districts begin in-person learning*, WKMG News & ClickOrlando (Aug. 24, 2020), https://www.clickorlando.com/news/local/2020/08/24/covid-19-cases-continue-to-decline-as-6-central-florida-school-districts-begin-in-person-learning/.

[9] To the extent Lasane is concerned about the potential makeup of the jury, Judge Mendoza's jury reflected a diversity of gender, races, and ages. (*See* Doc. Exh. I.) And Lasane has not provided any evidence

week, Judge Mendoza successfully seated a jury and began a trial using these safety measures. (*See* No. 6:17-cr-291-41DCI.) The trial has proceeded without issue, to this point. (*See id.*; *see also* Exh. I.) And other federal courts across the country, including in this district, recognizing that we are all in this for the long haul, have begun to successfully hold trials, utilizing the same safety techniques that will be implemented in this case.[10] (*See, e.g.*, Exh. L (listing the status of jury trials in the Eleventh Circuit District Courts).)

And, despite Lasane's derisive reference to "safety theater" (*see* Petition, p. 23), these techniques are consistent with best practices around the country, CDC and local health department guidelines. (*See* Exhs. J–K.) Studies have demonstrated that universal masking, especially when coupled with face shields, air flow engineering, social distancing, and increased hygiene and disinfection (all part of the Court's COVID-19 plan) can greatly reduce the risk from COVID-19.[11] (*See* Exh. J.) The health plan I am using

---

[10] *See supra* note 5.

[11] *How to Protect Yourself & Others*, CDC (July 31, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html; *Implementation of Mitigation Strategies for Communities with Local COVID-19 Transmission Community Mitigation Framework*, CDC

follows the scientific evidence and takes into account the experiences of my

colleagues around the country and expert recommendations.[12] (*See* Exh. J; *cf.*

Exhs. K–L.)

Lasane also argues his right to the effective assistance of counsel is

being infringed by COVID-19 procedures put in place at the Seminole

_____

(May 27, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/community-mitigation.html; Esposito S, Principi N, Leung CC, *et al.*, *Universal use of face masks for success against COVID-19: evidence and implications for prevention policies*, Eur Respir J (June 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7191114/ (explaining "[c]ontrolling a respiratory infection at source using a face mask is a well-established strategy" and "[u]niversal masking in public complements social distancing and hand hygiene in containing or slowing down" the pandemic); Jiao Wang, et al., *Mask Use During COVID-10: A risk adjusted strategy*, Envt'l Pollution 266 (2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7314683/ (summarizing studies showing the effectiveness of masks); Monica Gandhi, *Masks Do More than Protect Others During COVID-10: Reducing the Inoculum of SARS-CoV-2 to Protect the Wearer*, J. Gen. Intern. Med. (July 15, 2020), https://link.springer.com/article/10.1007/s11606-020-06067-8?ref=theprepping-com.

[12] *See also supra,* note 5; *Guidance for Conducting Civil Jury Trials During the COVID-19 Pandemic*, Am. Bd. of Trial Advocates (2020), https://www.abota.org/Online/Resources/Guidance_for_Conducting_Civil_Jury_Trials_During_the_COVID-19_Pandemic.aspx (white paper outlining recommended safety protocols for trials using available scientific guidance); *Issues to be Considered When Preparing for and Conducting a Civil Jury Trial During the Pandemic*, Am. College of Trial Lawyers (July 17, 2020), www.actl.com (same).

-14-

County Jail. (Petition, pp. 19–20.) This contention was addressed at the hearing and I noted the Seminole County Jail had very recently made conference rooms available to counsel upon request. (Exh. F, p. 9:21–24.) Defense counsel was offered rooms in the courthouse for Lasane to use to confidentially meet with his counsel for trial preparation. (Exh. F, p. 3:13–17.) And, as discussed at the hearing, this is a relatively simple case, particularly from an evidentiary standpoint and in terms of assessing the Government's case and cross-examination—counsel has not made a showing his ability to effectively communicate between now and the trial is impaired.[13] (*Id.* at 11:4–18.)

Finally, Lasane argues he is not asking for an indefinite delay—only a 60-day continuance. (Petition, p. 14.) But it would be more accurate to say a 60-day continuance *this time.* This case has already been continued multiple times because of COVID-19. (No. 6:19-cr-241-37DCI, Docs. 50, 56, 59.)  And the same reasoning in Lasane's request very well may apply 60-days from

---

[13] This case has been in a trial posture for months and was ready for trial on February 27, 2020; since that time there have been no significant developments, the only delays have been from illness and COVID-19.  (*See* No. 6:19-cr-241-37DCI, Docs. 29–40, 44.)

now. Sadly, no one can say when this pandemic will be over and at some point jury trials must resume. The Court cannot continue to delay the trial, in 60-day increments, until the threat from COVID-19 is completely eliminated. *See Ammar*, 842 F.3d at 1211.  That day may never come.[14] Nor is there evidence that case numbers or deaths will be lower if we simply wait 60 days. As Lasane himself concedes, Florida's statewide numbers have decreased recently—but those numbers could resurge if the pandemic winds shift.[15] (*See* Petition, p. 17.) What the district court can do—and has done—is to take every reasonable precaution to enhance everyone's safety, while balancing the rights of Lasane and the public to a speedy trial. *See Zedner*, 547 U.S. at 500–01; *Ammar*, 842 F.3d at 1211. Given the extensive precautions in place, the relative simplicity of the evidence in this case, the already significant delay, and the interests of the public, I believe the interests of

---

[14] Berkeley Lovelace Jr., *Dr. Anthony Fauci Warns the Coronavirus Won't Ever be Eradicated*, CNBC (July 22, 2020), https://www.cnbc.com/2020/07/22/dr-anthony-fauci-warns-the-coronavirus-wont-ever-be-totally-eradicated.html.

[15] The Court has also continued to monitor testing and case numbers in the counties covered by the Orlando division of the Middle District of Florida; this data also shows a recent decrease in COVID-19 cases. (*See* Exh. M.)

justice require proceeding without further delay.

ROY B. DALTON JR.
United States District Judge