## Introduction

On June 1, 2020, Chief Judge Barbara M. G. Lynn in the Northern District of Texas conducted a federal jury trial using special precautions in light of COVID-19. Despite the many obstacles the Court faced in completing a jury trial during a worldwide pandemic, the experience seemingly demonstrates that it is possible to conduct such a trial safely and fairly. The Court took many measures for the safety of all participants, attempting to ensure that everyone at the trial felt safe and could focus on the merits of the case rather than concerns about coronavirus. This handbook describes the experience and the safety measures put in place.

## Jury Selection

The first hurdle to conducting a jury trial during the coronavirus pandemic was seating a representative jury.

Three weeks before trial, the Court mailed jury summonses, "ability to participate" forms,[1] and confidential questionnaires[2] to 99 potential jurors.[3] The "ability to participate" form included not only the usual questions about eligibility and exemptions (e.g., asking whether the juror resides in the Division), but also about hardships related to coronavirus. Specifically, the form allowed jurors to indicate if they had been heavily impacted by coronavirus because (1) they or a family member were particularly at risk; (2) they had childcare or eldercare issues caused by coronavirus; or (3) they were a healthcare worker or someone who came into close contact with coronavirus patients because of work. The form also asked jurors to indicate whether, during jury service, they would want to wear a face covering, would not want to wear a face covering, or were indifferent. The confidential questionnaire contained additional questions about the case being tried (e.g., familiarity with potential witnesses) as well as questions related to coronavirus, such as whether the juror had tested positive for coronavirus, if the juror would be willing to inform the Court if he or she was feeling ill, and how the juror felt about people who did or did not wear face coverings in public.[4]

The response rate from potential jurors was favorable given the circumstances. Of the 99 questionnaires mailed to potential jurors, the Court eventually received 78 responses (though some were not received until the day of jury selection). Another three jurors notified Jury Services that they had moved out of the District, for a total response rate of over 80%.

Approximately 10 days before trial, the Court used a secure website to provide counsel with potential jurors' "ability to participate" forms and confidential questionnaires.[5] Based on the information provided in those materials, the Court asked the parties to agree on a list of jurors who should be excused prior to jury selection. The parties proposed excusing about 30 jurors, most of which the Court accepted. The

---

[1] This form is attached as Exhibit A. The coronavirus-related questions are on Page 1.

[2] This questionnaire is attached as Exhibit B. The coronavirus-related questions are on Pages 4–6.

[3] The Court initially ordered a pool of 100, but after the names were drawn, a check of the National Change of Address registry revealed that one juror had moved out of the Division, so only 99 potential jurors presumably received questionnaires.

[4] Under the circumstances, the Court was flexible in allowing counsel to add questions to the questionnaire. Having now had the chance to review the potential jurors' responses, it is apparent that some of the questions were repetitive and did not prompt any particularly informative responses. In future trials, the Court will likely remove some of these questions, such as those asking how the juror felt about other people wearing face coverings in public.

[5] Forms and questionnaires received less than 10 days before trial were provided to counsel as soon as they were received. Counsel were under strict instructions to keep the jurors' names and contact information confidential and to not contact the jurors by any method. Counsel were allowed, however, to research the potential jurors, including their social media sites, so long as the research was limited to public information.

parties appeared to be relatively generous in determining who to excuse, and they agreed to excuse several potential jurors who the Court likely would not have excused without agreement.  The parties also requested follow-up information for several potential jurors about issues raised in their responses, such as whether a college student's class schedule conflicted with the trial[6] or the specific nature of a potential juror's concern about coronavirus.  The Court created its own list of other jurors to contact regarding similar issues.  Court staff made the follow-up phone calls to collect the necessary information and reported back to the parties, after which additional jurors were excused prior to the day of jury selection.

Culling the list of potential jurors in this way prior to jury selection allowed the Court to minimize the number of people who would have to appear at the courthouse, and ensured that none of those present had severe health risks.[7]  Once excuses were granted, the Court was left with approximately 48 potential jurors who had responded to the summons and were expected to come to the courthouse for jury selection.

The Friday before jury selection, Jury Services randomized that group of 48 jurors.  Normally the randomization would occur when the jurors checked in, but it was instead done in advance to minimize complications and contact on the day of jury selection.  The potential jurors were then divided into three groups for jury selection.  When the jurors called the Jury Services phone line after 3:00 p.m. on Friday, they received instructions based on their group number.  Group 1 (jurors 1-16) was instructed to report at 7:45 a.m.  Group 2 (jurors 17-32) was instructed to report at 11:00 a.m.  Group 3 (the remaining jurors) was instructed to report at 2:15 p.m.

The recorded message informing jurors of their reporting times also instructed them to take their temperatures before leaving home.  If they had a fever or otherwise felt ill, they were told to inform Jury Services and instructed not to come to the courthouse.  The Clerk's Office obtained temperature strips in case any potential juror did not have a thermometer, but they did not need to be used.  Ultimately, only three jurors called in sick on the day of jury selection, and only one of them had a fever.

---

[6] The Court was stricter in granting excuses to students than it otherwise would have been.  Most of the students in the pool were taking online classes that were recorded and could be "made up" at a later date.  Generally, the Court did not consider that a sufficient excuse to miss jury service in these circumstances.

[7] The Court offered to conduct jury selection remotely, via a web-based platform, which would have eliminated the need for anyone except the seated jurors to come to the courthouse.  The Court would have made appropriate arrangements to accommodate any potential jurors who lacked the technology needed to participate.  Ultimately, the Court decided against this option for this trial because the parties did not both agree to it, but doing so in the future remains a possibility, particularly with all parties' agreement.

When jurors arrived,[8] they were provided with a mask if they did not already have one and directed to the jury room.  Yellow "social distancing" dots were placed on the ground, ensuring jurors remained at least six feet apart while standing in line for check-in.  The employee working the check-in table was separated from potential jurors by a portable plexiglass shield placed on the table.



Tables were placed at the front of the room for Chief Judge Lynn and each of the parties.  Rolling plexiglass panels were lined up in front of the tables to separate them from the potential jurors.  Chairs for the jurors were spaced throughout the room to allow at least six feet between each participant.  Before each session, the chairs were cleaned and disinfected, and juror numbers were clipped to the chairs to indicate which juror was assigned to which chair.  Staff also placed a bag in each juror's chair; each bag had a face shield with cleaning supplies,[9] gloves, a water bottle, a disposable juror badge, and instructions about social distancing and safe practices.




---

[8] Documents related to jury selection have been combined and attached as Exhibit C.  Pages 1–3 describe the Court's protocols.  Pages 4–6 include pictures of the jury selection room and the protective equipment purchased by the Court.  Pages 8–9 are the instructions for jurors while attending jury selection.

[9] The Clerk's office obtained face shields from GSA Advantage, from manufacturer BAC. https://www.gsaadvantage.gov/advantage/ws/catalog/product_detail?gsin=11000079131688.  As of this writing, the

Once all jurors for a particular group had arrived, Jury Services gave the them the usual jury orientation, including playing the jury video.  The Court budgeted one hour for that process, after which Chief Judge Lynn and the parties arrived in the jury room to conduct *voir dire*.

Jurors were asked to wear the face shields provided to them instead of masks during jury selection, particularly when they were being questioned individually.  Two podiums with microphones were placed in the room among the jurors.[10]  The podiums were placed at least six feet away from any chair, and were placed in two different areas of the room to minimize the number of people a potential juror would have to pass to reach a podium.  Most jurors were able to speak from their seats, but jurors were asked to use the microphones if there was a lengthy exchange or if the juror was soft spoken or near the back of the room. The microphones had microphone covers that ideally would be changed after each speaker.

 

The Court conducted most of the *voir dire* and then gave each side 15 minutes to conduct their own *voir dire*.  The Court's *voir dire* included not only the usual issues, such as the burden of proof and the presumption of innocence, but also a section on coronavirus.  The Court told the potential jurors about all of the measures it was taking (and would take throughout the trial) to ensure their safety.  The Court also asked the jurors if there were any additional precautions that would help them feel safer.  All but one participant felt the safety precautions were sufficient.[11]  Each *voir dire* session lasted for approximately 90 minutes.

---

face shields are available at a cost of $849.95 for a pack of 200.  Chief Judge Lynn obtained her face shield from Consortium (ShopConsortium.com), which sold boxes of 100 units at a cost of $2.50 per unit.

[10] Normally a court security officer would carry a portable microphone from juror to juror, so the stationary microphones reduced the contact between jurors and court personnel.

[11] One potential juror initially said she was satisfied with the safety measures, but later, under questioning from one of the parties, said coronavirus concerns would likely prevent her from focusing on the trial due to risk to her parents.  That juror was excused.

At the close of each session, the Court instructed all jurors to call the Jury Services phone line after 7:00 p.m. that evening to learn whether they had been selected for the jury.[12]  The Court also asked all jurors to be especially cautious about potential exposure to coronavirus as they went about their daily lives outside of the courthouse until they were released from jury service, so that they could be as protective as possible of their fellow jurors.  The Court then released all of the jurors for the day except those who either the Court or the parties wanted to follow up with individually.  Those jurors were asked to approach a microphone one at a time to answer questions, after which they were released.  Once all jurors from a group were released, the Court heard and ruled on any challenges for cause.  This allowed the Court to keep a running tally of the number of eligible jurors as the day progressed.  After that process had been completed for Group 3, the Court gave the parties time to make their peremptory strikes.  Ultimately, the Court was left with a sufficient number of eligible jurors that it was able to seat 12 jurors and 2 alternates.  The Court also placed an additional 2 potential jurors "on call" in case any of the selected jurors did not return to the courthouse the next day.

Before jury selection, one of the parties expressed concern that the response rate would be low, especially among certain demographic groups, and that the available jurors would not be a "fair cross-section" of the community.  However, these fears proved unsubstantiated.  A table summarizing the demographic information of the jury pool as a whole, those who returned questionnaires, those who attended jury selection, and the seated jury (with alternates) is included below.  Overall, there were no significant differences between these groups.  Non-Hispanic whites comprised approximately 50% of each group other than the seated jury.  The percentage of African Americans at each stage hovered around 15–20% but jumped to 36% of the seated jury.  The percentage of Hispanics was fairly consistent at each stage at 21–30%.  In a sample size as small as this, these kinds of minor variations are normal and most likely attributable to random chance.  Even the seemingly large demographic shift in the seated jury is not unusual for a group of 14, since the addition or removal of one or two members of a given demographic will significantly influence the jury's profile.

Women represented between 57% and 69% of each group, suggesting that men and women in the jury pool were about equally likely to actually attend jury selection and providing no evidence of a gender-based disparate impact from coronavirus on jury participation.

Finally, the average age was 40.2 for the jury pool as a whole, 40.6 for those who returned questionnaires, 40.1 for those who attended jury selection, and 38.1 for those on the jury.  The fact that these numbers are so strikingly similar is essentially coincidental, but based on these statistics, there is no evidence to suggest that coronavirus has altered the age distribution of those able to participate in jury trials.

|  | In Jury Pool | Returned Questionnaires | Attended Jury Selection | Seated Jury |
|---|---|---|---|---|
| **Men** | 35% | 31% | 41% | 43% |
| **Women** | 65% | 69% | 59% | 57% |
| **Total** | 100% | 100% | 100% | 100% |

[12] The jurors were informed they would be told one of three things.  (1) They were selected for the jury and needed to appear the following morning at 8:00 a.m.  (2) They had not been selected for the jury and their service was complete.  (3) Call back the following Monday night for further instructions.  The third option would have been necessary only if there were not enough eligible jurors remaining after all cause strikes, in which case the Court planned to combine the panel with jurors called for jury service the following week.

| | In Jury Pool | Returned Questionnaires | Attended Jury Selection | Seated Jury |
|---|---|---|---|---|
| **White** | 51% | 48% | 51% | 36% |
| **Hispanic** | 29% | 30% | 24% | 21% |
| **African American** | 15% | 16% | 20% | 36% |
| **Asian American** | 5% | 6% | 5% | 7% |
| **Total** | 100% | 100% | 100% | 100% |
| | | | | |
| **Average Age** | 40.2 | 40.6 | 40.1 | 38.1 |

**Trial**

Conducting the trial presented its own unique challenges.  To meet those challenges, the Court reoriented the courtroom and enacted new safety protocols.  The week prior to the trial, the Court held a hearing with counsel to discuss these changes and to answer any questions counsel had.  The Court also issued an Order memorializing the changes, providing the parties with a brief summary of the safety precautions that would be used at trial.  That Order is attached as Exhibit D.

Before trial begins, all participants (including jurors, counsel, and Court staff) should be instructed to take their temperatures every day before they leave for the courthouse.  If someone has a fever, they should be told to call the Court, but they should not come to the courthouse.  As mentioned previously, Chief Judge Lynn gave these instructions to potential jurors prior to jury selection, but in future trials she would instruct all trial participants to take their temperatures every day.[13]

The morning after jury selection, all 14 of the selected jurors arrived at the courthouse as requested.  They rode elevators to Chief Judge Lynn's courtroom on the 15th floor, with a maximum of 2 people at a time in each elevator.

To facilitate social distancing, jurors sat in the gallery instead of in the jury box.  A maximum of two jurors were seated on each bench, and seating was staggered in a "checkerboard" pattern so that no juror sat directly behind any other juror (this is depicted in a diagram below).  Papers with juror numbers were placed on the benches prior to trial so that each juror would know where to sit when first entering the courtroom.  Ideally, jurors should be lined up prior to entry into the courtroom so that the jurors sitting closest to the walls are able to enter first and do not have to pass jurors seated near the aisle.  The Court again reminded jurors before they left for the evening that they should be as protective of their fellow jurors as possible by limiting their potential exposure to illness.



| Front of Courtroom | | |
|---|---|---|
| ✖        ✖ | ✖        ✖ | |
| ✖ | ✖ | |
| ✖        ✖ | ✖        ✖ | |
| ✖   Gallery | ✖ | |
| ✖        ✖ | | |
| Each X represents a juror or alternate | | |

---

[13] If funding were available, it might be a good idea to have everyone's temperatures taken as they enter the building, but doing so was not feasible for this trial.

The witness testified from a seat in the jury box rather than the witness stand.  This allowed the witness to enter the courtroom from the jury room, keeping the witness away from the central aisle and the seated jurors.  The jury box was surrounded on two sides[14] by rolling plexiglass panels, and a new microphone was installed so the witness could clearly testify.  To pass an item to a witness, counsel would place the item on the ledge in front of the jury box and go back to the lectern.  Only then would the witness retrieve the item from the ledge.  The jury box—including the witness's seat, the microphone, and the plexiglass wall—was cleaned after each witness's testimony.



Counsel seats and the lectern were rotated 180 degrees so that counsel would face toward the jurors in the gallery.  To ensure Chief Judge Lynn could monitor behavior even when the lawyers had their backs to her, the Court installed a camera at the back of the courtroom that streamed video from the jurors' perspective to a monitor on the bench.



---

[14] The side facing the gallery and the side facing counsel table.



That camera also facilitated public access to the trial.  Because the jurors were seated in the gallery, there was essentially no space for spectators.  Using the camera at the back of the courtroom, however, the Court simulcast the proceedings to another courtroom down the hall where members of the public were able to observe the proceedings.

Everyone in the courtroom wore gloves and a face covering (either a mask or plastic shield).  The only exception was the testifying witness.[15]  After a witness took the stand, he or she would remove his or her mask for the duration of the testimony.  This procedure allowed jurors to view the witness's face and help assess his or her credibility.  Because the witness was testifying behind plexiglass and was more than six feet from any other person, the risk to participants was minimized.



---

[15] There was one other short exception when everyone in front of the bar removed their masks to allow a witness to attempt to identify the defendant.

Jurors generally liked to wear face shields rather than masks, and several indicated that they preferred it when the attorneys also wore face shields.  At least one juror felt it was difficult to understand some of the attorneys because of their masks and preferred to see the attorneys' faces.

The Court offered to defense counsel the courtroom's ListenTalk devices (which are normally used by interpreters) to communicate with co-counsel and the defendant while maintaining their distance from each other.  Defense counsel preferred a messaging program on their laptops for ongoing communications.

All microphones had microphone covers on at all times.  Ideally, microphone covers should be changed after each user. This was especially important for testifying witnesses since they were not wearing masks while using the microphone.  The crew that cleaned the jury box between witnesses replaced the microphone cover.

To maintain appropriate social distancing, bench conferences were not permitted.  In the few instances in which the parties needed to address an issue with the Court outside the jury's hearing, the Court excused the jurors for a break or counsel emailed the Court.  If email communication is necessary, all participants should ensure that any necessary record is made at the next break.

The Court also generally did not allow physical exhibits to be passed to the jurors.  Most exhibits were displayed electronically on screens facing the gallery.  On two occasions, one party requested that the jurors be given a copy of a transcript.  The Court allowed the party to create a copy of the transcript for each juror and required that the person distributing the copies wear gloves, but the use of this procedure should be limited to the extent possible.

Because the jury room was too small to permit social distancing, the jurors took breaks and deliberated in another courtroom across the hall.  The Court entered a partial sequester order and provided box lunches (sandwiches) so that jurors did not have to leave the floor during the day.  The Order is attached as Exhibit E.

Before releasing the jurors to deliberate and excusing the alternates, the Court asked each juror individually if he or she was feeling well and was prepared to proceed.  All jurors responded they were, so the Court released the alternates.

During deliberations, the Court provided the jury with a sanitized laptop computer and instructed the parties to provide a single flash drive containing electronic versions of all admitted exhibits.  The foreperson used the laptop to access any exhibits the jurors wanted to review.[16]  The laptop was connected to a large rolling screen in the deliberation room so that the other jurors could see the exhibits while maintaining appropriate distance from each other.  Jury deliberations lasted several hours, and the jury asked two questions before reaching a verdict.

**Post-Trial**

After the jury announced its verdict, the foreperson raised his hand and told the Court that the other members of the jury had asked him to express their appreciation for the Court and all of the safety measures that it had put into place.  All of the jurors said they felt very safe throughout the trial and were thankful for everything the Court had done.

---

[16] The Court reminded the jury prior to deliberating that it would be wise to choose a foreperson who would be comfortable with operating the computer.

The Court also asked the jurors to complete an optional post-trial questionnaire.  All jurors did so.  The questionnaire asked about the jurors' experience, particularly as it related to the coronavirus pandemic and the Court's safety measures.  Again, all jurors expressed their satisfaction.  Suggestions for improvement were minor (e.g., smoke breaks or water bottles in court).[17]  The Court also visited with the jurors in person and expressed gratitude for their service.

**Conclusion**

Conducting the first federal jury trial under coronavirus precautions was a massive undertaking.  It involved at least 17 people in the Clerk's Office, countless other personnel, and weeks of planning.  It required an enormous expenditure of resources, including essentially a full day of *voir dire*, three courtrooms, and countless staff going above and beyond the call of duty.  But the lessons learned made it worthwhile.  This trial showed that jury trials are possible even amidst the coronavirus pandemic, and the wheels of justice can continue to turn, but the tangible and intangible costs are very high and require scheduling negotiations between Judges so that court systems are not overburdened.

---

[17] Anonymized versions of the completed questionnaires are attached as Exhibit F.

# Exhibit A

Ability to Participate Form

*UNITED STATES DISTRICT COURT*



Printed Name: _____

Participant Number (located on your summons: _____

Please make any changes to the name or address on your summons form:

_____

_____

_____

Daytime Phone: _____

Evening Phone: _____

### ABILITY TO PARTICIPATE IN JURY SERVICE

Everyone who receives a jury Summons must **complete this Ability to Participate in Jury Service form and the Jury Information Form at the bottom of your Summons.  Unless you fit into a category under part 6. of this form, you must also complete** the Confidential Questionnaire.  Return by mail, fax to (214) 753-2279, or email to DallasJury@txnd.uscourts.gov.  Attach additional pages as necessary to explain your answers.  **Failure to submit all documents as instructed will cause delays.**  Please contact the clerk's office if you need assistance. Thank you.

**Dates of Potential Service: <u>June 1, 2020 through June 12, 2020</u>**

1.  If selected, **I WILL BE ABLE TO SERVE AS A JUROR,** with jury selection beginning June 1, 2020, through June 12, 2020, <u>AND</u> (please check all that apply):

    a. _____ I will want to wear a protective face covering

    b. _____ I will not want to wear a protective face covering

    c. _____ I have no opinion regarding a protective face covering and will wear one if asked

2.  **I WISH TO BE POSTPONED** from jury service because of effects of the COVID-19 pandemic (please check all that apply and explain).

    a. _____ I or someone in my household is at high risk for complications from contracting COVID-19 disease because of age, medical condition, or other characteristic.

    b. _____ I have childcare or eldercare issues that will make it difficult for me to serve.

    c. _____ I am a healthcare worker directly involved with the treatment of the COVID-19 disease, or I work in another field that puts me in direct contact with people who have been diagnosed with COVID-19.

    Please explain in detail below any request for postponement in part 2. above related to the COVID-19 pandemic.

    _____

    _____

    _____

3.  **I WISH TO HAVE MY JURY SERVICE POSTPONED** during the above referenced time period because:

    a. _____ I have prepaid travel plans, and my money cannot be refunded (please enclose supporting documentation).
    When did you make the reservations? _____ When are you leaving? _____
    When are you returning? _____ When will you be available? _____

    b. _____ I have an important commitment that would prevent me from serving during the service period.  Please explain and give the date or dates you could not be available: _____

    _____

    c. _____ I have a medical procedure/appointment that would prevent me from serving during the service period.  Please provide the date or dates of the medical procedure/appointment: _____

    _____

4.    **I WISH TO BE EXCUSED** from jury service for an indefinite time because:

   a. _____ I have active care of a child or children **under ten years of age and I am not employed** outside my home.  My service would require leaving the child or children without adequate supervision.
   **My children's ages are:** _____

   b. _____ I am caring for an aged or infirm person, and **I am the only person** able to provide this care.  State the relationship of the person for whom you are caring, the person's age and nature of the infirmity: _____

   _____

5.    **I WISH TO BE EXCUSED** from jury service for an indefinite time because:

   a. _____ I am over 70 years of age and **I do not wish to serve.**  State your age and date of birth: _____

   b. _____ I am a licensed medical doctor and actively practice medicine in the State of Texas.

   c. _____ I am currently enrolled as a full-time student of a public or private secondary school or an accredited college or university.  State the name of the educational institution and **enclose a copy of your class schedule** indicating the number of enrollment hours, expected graduation date and whether or not you intend to enroll in summer courses:

   _____

   _____

6.    **I AM NOT QUALIFIED** to serve as a juror because:

   a. _____ I am not a citizen of the United States.

   b. _____ I have a charge pending against me for the commission of, or have been convicted of, a crime punishable by imprisonment for more than one year. Please state the date and nature of the offense: _____

   _____

   c. _____ I am incapable by reason of mental or physical infirmity to render satisfactory jury service. Please explain. **Please provide a statement from your doctor stating you are unable to serve.** _____

   _____

   _____

   d. _____ I am under the age of 18.

   e. _____ I do not reside in the Dallas Division. State your county of residence: _____
   **(The counties of the <u>Dallas Division</u> are Ellis, Hunt, Johnson, Kaufman, Navarro, and Rockwall.)**

   f. _____ I am unable to speak the English language and am incapable of understanding what will be said in court. (*Yo no puedo hablar la lengua Inglés, y yo soy incapaz de entender lo que se dice en la corte.*)

If there is anything else the Court should know that would impact your ability to serve as a fair and impartial juror, please explain:

_____

_____

_____

**IMPORTANT:** If you have requested to be postponed or excused, you must still appear for jury selection on the date you are instructed unless you receive notice that your request for postponement or excuse has been granted.

I hereby declare under the penalty of perjury that my answers are true and correct to the best of my knowledge, information, and belief.

_____          _____
Signature                                                      Date

# Exhibit B

Confidential Questionnaire

# JUROR QUESTIONNAIRE

### General Instructions

Please fill out the attached questionnaire when you receive it and **return it no later than May 21, 2020**. **You may return it by mail using the enclosed postage paid envelope, email it to DallasJury@txnd.uscourts.gov, or fax it to 214-753-2279**. Please read carefully the attached **Federal Juror Instructions** and follow the additional instructions.

This questionnaire is designed to help simplify and expedite the jury selection process. The purpose of these questions is to determine whether prospective jurors can impartially decide a case based upon the evidence presented at trial and the instructions on the law given by the presiding judge. You are sworn to give true and complete answers. Please answer all the questions to the best of your ability.

Please keep in mind that there are no right or wrong answers, only complete and incomplete answers. Complete answers are far more helpful than incomplete answers. Unless the question states otherwise, the fact that a particular question is asked does not imply that the subject matter of the question is an issue in the case for which you are being considered. As you read the questions, you should not draw any inferences about the issues that will be decided. You are instructed not to discuss the questionnaire with anyone. The only exception is if you need help in filling out the questionnaire, as discussed in the next paragraph. You should not use the internet or do any research about matters covered in the questionnaire, and you should not speculate about what case it involves.

Please print or write your answers clearly in blue or black ink. You must answer all the questions to the best of your ability. If you do not understand a question or do not know the answer, please write "I do not understand" or "I do not know" in the space provided for the answer. If you believe that any of the questions do not apply to you, please write "Not Applicable" or "N/A" in the space provided. **Do not leave any question unanswered.** It is important that the answers be your own individual answers. You may not get help from others unless you are incapable of writing your own answers. If that is the case, state the name, address and relationship to you of the person who helped you, and state why their help was needed. If you need more space for your responses or wish to make further comments regarding any of your answers, please continue your answer in the margin next to the question. Do not write on the back of any page. **PLEASE PRINT LEGIBLY. You must sign the affirmation page.**

\*\*After filling out the questionnaire, please place a "C" before any answers you deem confidential.

\*\***HOWEVER YOU MUST FILL OUT EVERY ANSWER COMPLETELY**\*\*

### CONFIDENTIAL QUESTIONNAIRE

**First Name and Last name** _____
<div align="center">(For example: John Smith)</div>

**Date & Place of Birth:** _____ **County of Residence:** _____

**Marital Status:** _____

1.  What is your race? _____

2.  What is your income? _____

3.  How long have you lived at your present address? _____

4.  List any other places where you have lived in the last five years (city, state and how long in each place). _____

    _____

    _____

    _____

5.  Do you own or rent your place of residence? _____

6.  What is the last grade of school, including college or graduate school, that you finished? _____

    _____

7.  If you attended college, and, if applicable, graduate school, provide the name of the college and graduate school and major area of study, and degree(s), if any. _____

    _____

    _____

    _____

    _____

8.  Describe your employment, including stating the name of your employer, your job responsibilities and length of time so employed.  If retired or unemployed, state your principal occupation when employed. _____

    _____

    _____

    _____

<div align="center">PAGE 1 OF 7 (go to page 2 of 7)</div>

Last Name only: _____

**\*\*\*\*\*MAKE SURE YOU FILLED OUT PAGE 1 OF 7 COMPLETELY**

9.  If applicable, list the name of your spouse / life partner, and describe that person's occupation or employment and job duties. If retired or unemployed, state that person's principal occupation when employed. _____

_____

_____

_____

10.  List the names and ages of your children and stepchildren, if any, and the name, age, and date of death of any deceased children. As to any children over the age of 18, describe their occupation or identify the school they are attending. _____

_____

_____

_____

11.  If you have served in the Armed Forces:
(a) total years served _____ (b) branch _____ (c) last rank _____

12.  Listed below are items concerning leisure time activities:
(a) Hobbies _____

(b) Clubs, groups, unions or other organizations _____

(c) Newspapers or magazines you read regularly _____

(d) Favorite TV program _____

13.  What three (3) people do you admire the most? _____

The least? _____

14.  What book did you read last? _____

15.  If you do not object to doing so, state your political preference, if any. _____

16.  If you do not object to doing so, state your religious preference, if any. _____

17.  Describe any prior jury service you have had, including whether it was a grand jury or a civil or criminal jury and where and when your service took place, and the outcome.

_____

_____

_____

If you have served on a jury, were you the foreperson? _____

Last Name only: _____

**\*\*\*\*\*MAKE SURE YOU FILLED OUT PAGE 2 OF 7 COMPLETELY**

18.   Describe any experience you, a close friend or a family member, ever had as a plaintiff or defendant in a lawsuit, including where, when, type of case and the outcome.  If yes, please state specifically if the U.S. government was a party. _____

_____

_____

19.   Have you or a member of your family ever worked or volunteered for a governmental entity?  If so, provide details. _____

_____

_____

20.   Is any member of your immediate family a lawyer, police officer, other law enforcement agent or connected to the legal or law enforcement professions?  If so, state the nature of the connection or relationship. _____

_____

_____

21.   Have you, a member of your family, or a close friend ever been arrested or convicted of a crime? If so, please provide the details. _____

_____

_____

_____

22.   Have you, a member of your family, or a close friend ever been a defendant in a criminal case?  If so, please provide the details, including the outcome of the proceeding. _____

_____

_____

23.   Have you, a member of your family, or a close friend ever served time in prison? If so, please provide details. _____

_____

_____

24.   Have you, a member of your family, or a close friend ever been the victim of a crime? If so, please provide details. _____

_____

_____

Last Name only: _____

**\*\*\*\*\*MAKE SURE YOU FILLED OUT PAGE 3 OF 7 COMPLETELY**

25.  Have you, a member of your family, or a close friend ever been involved as a witness, complainant, or accused in a court proceeding of any kind?  If so, please provide the details. _____

_____

_____

_____

_____

26.  Have you ever received legal training of any kind?  If so, what was that training? _____

_____

_____

27.  Do you own a firearm? _____

28.  Are you or a close relative a member of the NRA? _____

29.  Do you or a close family member receive Social Security? _____

_____

_____

_____

30.  State your views on gun control: _____

_____

_____

_____

31.  Of the names listed below, please circle any and all you think you might know:

Aldric Roberson

Denzle Daniel Green

Tara Shakeithia Paris

Joshua Nino de Guzman

Heather Camune

Christopher Loboda

32.  Have you received a test for COVID-19? If so, when? _____

_____

**PAGE 4 OF 7 (go to page 5 of 7)**

Last Name only: _____

**\*\*\*\*\*MAKE SURE YOU FILLED OUT PAGE 4 OF 7 COMPLETELY**

33.     Have you requested to be tested for COVID-19 and been denied the test? _____

_____

34.     Have you or a close friend or family member had COVID-19? Who and when? _____

_____

_____

35.     Have you traveled recently? If so, where? _____

_____

_____

36.     From which sources do you typically get your news? _____

_____

37.     Do you use public transportation? _____

_____

38.     Are you willing to abide by any rules the Court instructs you to regarding social distancing
        during trial if you are selected as a juror? _____

_____

39.     Are you willing to notify the Court immediately if, during trial, you feel ill OR are exposed to
        anyone feeling ill? _____

_____

40.     Have you made statements on any social media (Facebook, Instagram, Twitter, etc.) related to the
        COVID-19 crisis? If yes, what were your statements? _____

_____

_____

41.     In your opinion, are there general characteristics (such as gender, race, age, political party) that
        make people more or less likely to be comfortable in public places at present?  If so, what
        characteristics make a person more likely to go into public? Less likely? _____

_____

_____

42.     If you see a person wearing a mask in a public place, such as the grocery store, what are your
        thoughts about that person? _____

_____

Last Name only: _____

**\*\*\*\*\*MAKE SURE YOU FILLED OUT PAGE 5 OF 7 COMPLETELY**

43.   If you see a person in a public place and he or she is not wearing a mask, what are your thoughts about that person? _____

_____

44.   Should wearing a mask in public be something that is a personal choice? Why or why not?

_____

_____

45.   When is the last time you have worked? If you have not worked, what have you been doing over the last few months? _____

_____

_____

46.   Have you worn any protective materials when you have left your residence over the last few months? _____

_____

47.   Do you have strong views about wearing a mask or gloves? What are they? _____

_____

_____

48.   What are your views about stay at home orders? _____

_____

_____

49.   State any and all reasons why you could not serve on a jury during the week of June 1, 2020:

_____

_____

_____

_____

*****MAKE SURE YOU FILLED OUT PAGE 6 OF 7 COMPLETELY

# SIGN YOUR FULL NAME BELOW

_____

**JUROR'S FULL SIGNATURE (FIRST AND LAST NAME)**
(For example: JOHN A. SMITH)

# Exhibit C

Jury Selection Administrative Protocol

U.S. District Court
Northern District of Texas

Notes for Processing Jurors During COVID-19 Pandemic

1.  Facility

At the screening station, jurors are given large plastic bags for their belongings.  Any juror who arrives without a face covering or mask is given one.

*Voir dire* is done in either a central jury assembly room or in the largest courtroom available.  (In one division, a state court auditorium will be used.)  Staff will have pre-marked the seats where jurors are to sit.  Each marked seat has a juror supply bag placed on it (see description in 3. below).

Signs are posted throughout each courthouse, and markers on the floors remind people to stay at least 6 feet away from each other.  Only two people are permitted on an elevator at one time.

Screens (plexiglass or acrylic) are installed for jury check-in and in the courtrooms.

All microphones are covered with disposable covers.  The witness microphone is to be sanitized between witnesses, and disposable covers are to be replaced.

Each courtroom layout is to be evaluated.  In most courtrooms, jurors are seated in the gallery.  The jury box serves as the witness stand.  Microphones and monitors on counsel tables and on the podium are turned around so that the attorneys face the gallery.  Although the attorneys' backs are to the judge, the judge can see attorney on a monitor on the bench.  (A camera at the back of the courtroom will provide the video feed.)

Jurors view evidence during trial from monitors that face the gallery.

Jury deliberation is done in either a large courtroom or the central jury assembly room, depending on the division.

Attorneys are instructed to submit all exhibits electronically in advance.  No exhibits are handed to jurors.  The jurors pull up exhibits electronically in the deliberation room (courtroom or jury assembly room).

Defense attorneys are equipped with ListenTalk transceivers/receivers to communicate with each other and with the defendant during the proceeding.

Hand sanitizers are placed throughout the building and in the courtroom.  Extra masks and gloves are available in the courtroom.

Proceedings (including *voir dire*) are broadcast into a nearby courtroom or other large room for visitors.

See Attachment A for examples of items mentioned above.

2. Selection

A prescreening "Ability to Serve" form is used to minimize the number of people who must report in person. (Thus far, seven separate panels have been ordered in four divisions. See Attachment B for the "Ability to Serve" form for the Dallas division.)

When called to report through AJIS, jurors are reminded of all COVID-19 restrictions in place at the courthouse and are instructed to stay home if they are not feeling well, are running a fever, have been exposed to anyone who is ill, etc.

Juror instructions that are used in orientation are attached for the Dallas division. (See Attachment C.)

3. Supplies

Juror supply bags are prepared for both grand and petit jurors (paper bag with handles) that include:

    a. A letter regarding social distancing instructions and a parking form (if needed for the division)
    b. Water bottle(s)
    c. Acrylic face shields (for petit jurors only to be used in *voir dire*)
    d. Adhesive juror badge (we are only using disposable badges now)
    e. CDC flyer on safe practices
    f. Mini tissue packet
    g. Alcohol wipe packets
    h. Gloves (if required by the presiding judge)
    i. Certificate of attendance (for petit jurors who participate in *voir dire*; selected jurors will be given individualized certificates at the end of trial)

4. Check-in Process

The jury clerk, wearing a mask or face shield, is positioned at a check-in desk behind a plexiglass screen that allows a juror to show the jurors' driver's license and summons. The jury clerk scans the juror's attendance from a report rather than from the summons.

The jury clerk shows the juror where to sit using a laminated seat map chart. The jury clerk marks off each juror's position on the chart as the juror is seated.

5. Breaks

Breaks are staggered.  Staff monitor the breaks to ensure physical distancing. Signs are posted on restrooms to indicate maximum capacity.

2

6.  Snacks and Lunch

All juror snacks are packaged and presorted to minimize touching the items.

The presiding judge determines in advance whether to order a partial sequester.  If partially sequestered by court order, a light lunch is ordered and delivered to the jury deliberation room at the designated time.

7.  Cleaning

Cleaning is done before and after each courtroom proceeding and each juror orientation and selection.

(We still do not have a firm courtroom cleaning protocol negotiated with GSA. GSA is taking direction from GSA headquarters, and they require an RWA for any cleaning that is considered "above standard."  Thus far, contract cleaning personnel have been cooperative, but this may change as the agencies in our building return to work in the coming weeks.)

**Attachment A**

Items Purchased for Jury Trials



Acrylic room dividers (specs are attached as Attachment D) in courtroom; witness stand moved to jury box; monitors facing the gallery enable jurors to see evidence




Floor markers; hand sanitizer



Bags packed for jurors



Bags for juror personal items (to be used for x-ray screening and to keep personal items segregated in bins during *voir dire*)



Face shield for *voir dire* (will be used without mask)



Microphone covers



Acrylic shield for juror check-in desk



Jury assembly room set up for *voir dire*

U.S. District Court for the Northern District of Texas
Dallas Division

Instructions for Jurors

The United States District Court for the Northern District of Texas appreciates your participation in jury service. The Court wants you to know that we are aware of your health concerns during these challenging times. We are committed to your safety and will take every reasonable precaution to protect your health, as well as that of the parties, lawyers, and Court staff during jury selection and trial. You will be paid a $50.00 attendance fee for each day you are required to report for jury duty. You will also receive reimbursement at a rate of 57.5¢ a mile for transportation from your house to the courthouse.

- Upon arrival, you received a paper bag that includes several items. The bags were prepared by staff following strict protocols more than 72 hours ago.

- **Please immediately put on the gloves and plastic face shield provided in your bag.** Once the plastic face shield is in place, you may lower your face covering that is underneath the shield. Please wear the face shield and gloves during your jury service unless instructed otherwise by the judge. If you need a larger pair of gloves, please ask the jury clerk.

- Please locate the adhesive "Juror Badge" in your bag. Stick the badge on the upper left side of your chest so that it is visible to all. Please do not take the badge off until you are dismissed for the day.

- Please locate the large numbered card in your bag. This number should match your seat number. If it does not, please notify a clerk's office staff member. You will hold this card up during voir dire when responding to questions.

- The judge will dismiss you for breaks and at the end of the day. Court staff will give you additional instructions as needed.

- Your bag includes a bottle of water. If you need additional water during the day, please notify a clerk's office staff member. Do not drink from a water fountain.

- When you leave for the day, please take the bag and its contents with you, or discard the bag in a trash receptacle.

To inhibit the spread of respiratory disease, physical distancing will be strictly enforced. Please follow all directions to maintain a minimum amount of space—at least 6 feet—between yourself and other people.

While at the courthouse, we ask you to do the following:

- Please look for floor tape, barricade tape and temporary signs in the hallway outside the courtroom, jury room, and bathrooms, for guidance.

- Please avoid touching the chairs in front of you. If you are empaneled to hear the case and report to a courtroom tomorrow, please avoid touching the bench in front of you.

- No more than two people should be on an elevator at a time. A clerk's office employee will be at the elevators to assist you if you are required to go up to the courtroom.

- When exiting this room or a courtroom for breaks, you must exit in order, starting with the last row in the back of the room to the first row, left side, then right side, until all jurors have exited.  The doors will be propped open for you; please do not touch the door.

- Only two people will be permitted in the restroom located through the kitchen door at the front of the room at a time.  Restrooms are also available across the lobby of this building. Please wait outside as needed to limit the number of people in a restroom at once. Disinfectants will be available for your personal use.  Please thoroughly wash your hands as directed by posted signs.

- When you arrive back in this room or a courtroom following a break, please wait at a safe distance away for your turn to sit down.


High contact surfaces will be routinely wiped down using an EPA approved disinfectant that is effective against COVID-19.  Examples of high contact surfaces include: handrails, doorknobs, water faucets and handles, elevator buttons, sinks and toilets, restroom stall handles, and push plates.

This room and courtrooms are thoroughly cleaned before your arrival and will be cleaned again after you leave in preparation for the following day.

If at any time during the day you observe something that you believe is potentially harmful to you or to another person, immediately notify a clerk's office staff member or the judge.  We take your personal safety very seriously, and we appreciate your cooperation.

ATTACHMENT C

*UNITED STATES DISTRICT COURT*
*NORTHERN DISTRICT OF TEXAS*



Please make any changes to the name or address printed on your summons form:

_____

_____

_____

Daytime Phone: _____

Evening Phone: _____

### ABILITY TO PARTICIPATE IN JURY SERVICE

Everyone who receives a jury Summons must **complete this Ability to Participate in Jury Service Form and the Jury Information Form at the bottom of your Summons.** **Unless you fit into a category under 5. or 6. of this form, you must also complete** the Confidential Questionnaire. Return by mail, fax to (214) 753-2279, or email to DallasJury@txnd.uscourts.gov.  Attach additional pages as necessary to explain your answers. **Failure to submit all documents as instructed will cause delays.**  Please contact the Clerk's Office if you need assistance.  Thank you.

## Dates of Potential Service: <u>June 1, 2020 through June 12, 2020</u>

1.  If selected, I **WILL BE ABLE TO SERVE AS A JUROR**, with jury selection beginning June 1, 2020 through June 15, 2020, <u>AND</u> (please check all that apply):

    a. _____  I will want to wear a protective face covering

    b. _____  I will not want to wear a protective face covering

    c. _____  I have no opinion regarding a protective face covering and will wear one if asked

2.  **I WISH TO BE** postponed from jury service because of effects of the COVID-19 pandemic (please check all that apply, and explain).

    a. _____  I or someone in my household is at high risk for complications from contracting COVID-19 disease because of age, medical condition, or other characteristic.

    b. _____  I have childcare or eldercare issues that will make it difficult for me to serve.

    c. _____  I am a healthcare worker directly involved with the treatment of the COVID-19 disease, or I work in another field that puts me in direct contact with people who have been diagnosed with COVID-19.

    Please explain in detail below any request for postponement in 2 above related to the COVID-19 pandemic.

    _____

    _____

    _____

    _____

    _____

1

**3.  I WISH TO HAVE MY JURY SERVICE POSTPONED** during the above referenced time period because:

a. _____  I have prepaid travel plans, and my money cannot be refunded (please enclose copy of supporting documentation).

When did you make reservations? _____

When are you leaving? _____  When are you returning? _____

When will you be available? _____

b. _____  I have an important commitment that would prevent me from serving during the service period. Please explain and give the date or dates you could not be available:

_____

_____

_____

c. _____  I have a medical procedure/appointment that would prevent me from serving during the service period. Please provide the date or dates of the medical procedure/appointment:

_____

_____

_____

4.  **I WISH TO BE EXCUSED** from jury service for an indefinite time because:

a. _____  I have active care of a child or children **under ten years of age and I am not employed** outside my home. My service would require leaving the child or children without adequate supervision.

**My children's ages are:** _____

b. _____  I am caring for an aged or infirm person, and **I am the only person** able to provide this care. State the relationship of the person for whom you are caring, the person's age and nature of the infirmity:

_____

_____

5.  **I WISH TO BE EXCUSED** from jury service for an indefinite time because:

a. _____  I am over 70 years of age and **I do not wish to serve.**

State your age and date of birth: _____

b. _____  I am a licensed medical doctor and actively practice medicine in the State of Texas.

c. _____  I am currently enrolled as a full-time student of a public or private secondary school or an accredited college or university. State the name of the educational institution and **enclose a copy of your class schedule** indicating the number of enrollment hours, expected graduation date and whether or not you intend to enroll in summer courses:

_____

_____

_____

2

6. **I AM NOT QUALIFIED** to serve as a juror because:

    a. _____  I am not a citizen of the United States.

    b. _____  I have a charge pending against me for the commission of, or have been convicted of, a crime punishable by imprisonment for more than one year. Please state the date and nature of the offense:

        _____

        _____

        _____

    c. _____  I am incapable by reason of mental or physical infirmity to render satisfactory jury service. Please explain. **Please provide a statement from your doctor stating you are unable to serve**.

        _____

        _____

        _____

    d. _____  I am under the age of 18.

    e. _____  I do not reside in the Dallas Division.

        State your county of residence: _____

        **(The counties of the <u>Dallas Division</u> are  Ellis, Hunt, Johnson, Kaufman, Navarro, and Rockwall.)**

    f. _____  I am unable to speak the English language and am incapable of understanding what will be said in court. (*Yo no puedo hablar la lengua Inglés, y yo soy incapaz de entender lo que se dice en la corte.*)

If there is anything else the Court should know that would have an impact on your availability to serve as a fair and impartial juror, please explain briefly:

_____

_____

_____

**IMPORTANT:** If you have requested to be postponed or excused, you must still appear for jury selection on the date you are instructed unless you receive notice that your request for postponement or excuse has been granted.

I hereby declare under the penalty of perjury that my answers are all true and correct to the best of my knowledge, information, and belief.

_____        _____

Signature                                                                       Date

_____        _____

Print Name                                                                  Participant Number
(located on summons)



📞 877-839-3330



**Clear Acrylic Room Divider - 1 Panel - 6' 2"H x 3' 4"L**
Screenflex
SKU: SCR-CRD1

1 Review

✓ **100%** of respondents would recommend this to a friend

**$597.95**

| − | 1 | + | ADD TO CART |

Other Sizes

○ ○ ○

---

**Customers also shopped for**



‹

Impromptu Portable Magnetic Whit…
$ **337** 95
Safco

Motion Portable Room Dividers - 6'H
From $ **599** 95
Quartet

**Sale**
Portable Magnetic Whiteboard Ro…
$ **214** 75
Luxor

Portabl…
From $ **5**
Screenf…

›

---

**DESCRIPTION** ⌄

Section off areas of your room and still have an unobstructed view of activity on the other side with Screenflex's Clear Acrylic Room Divider. The clear room divider is made of 3/16" thick OPTIX acrylic, a non-yellowing, lightweight and highly impact-resistant material that is three times stronger than standard double-strength window glass. In addition to separating spaces, the room divider serves as an attractive markerboard surface, allowing you to write notes directly on the surface. The sturdy extruded aluminum channel framing prevents warping and instability year after year. Roll the panel into place with ease on the self-leveling casters. The Screenflex Clear Acrylic Room Divider comes backed by a three-year warranty.

**Key Features**

- Allows sectioning of rooms without obstructing the view
- Made of extremely durable acrylic
- Doubles as a markerboard surface
- Wet erase markers work best

Clear Acrylic Room Divider - 3 Panels - 6' 2"H x 10'L | Schoolsin



📞 877-839-3330



**Clear Acrylic Room Divider - 3 Panels - 6' 2"H x 10'L**

Screenflex

SKU: SCR-CRD3



1 Review

✓ **100%** of respondents would recommend this to a friend

**$1,640.95**

| — | 1 | + | ADD TO CART |

Other Sizes

○ ○ ○

---

## Customers also shopped for



Impromptu Portable Magnetic Whit...
$ **337** 95
Safco



Motion Portable Room Dividers - 6'H
From $ **599** 95
Quartet



**Sale**

Portable Magnetic Whiteboard Ro...
$ **214** 75
Luxor

Portabl...
From $ **5**
Screenf...



---

## DESCRIPTION ⌄

Section off areas of your room and still have an unobstructed view of activity on the other side with Screenflex's Clear Acrylic Room Divider. The clear room divider is made of 3/16" thick OPTIX acrylic, a non-yellowing, lightweight and highly impact-resistant material that is three times stronger than standard double-strength window glass. In addition to separating spaces, the room divider serves as an attractive markerboard surface, allowing you to write notes directly on the surface. The sturdy extruded aluminum channel framing prevents warping and instability year after year. Roll the room divider into place with ease on the self-leveling casters. The Screenflex Clear Acrylic Room Divider comes backed by a three-year warranty.

**Key Features**

- Allows sectioning of rooms without obstructing the view
- Made of extremely durable acrylic
- Doubles as a markerboard surface
- Wet erase markers work best

1200514B515543

Need help? Call us. 📞 **1-800-260-2776** / 💬 **Live Chat** / ✉️ **Email Us** ( M-F: 8-7 Eastern )

**School Outfitters is open and available to help you. We have inventory in stock and ready to ship.**

  

Account    Track Order    Cart

**Products    Room Designs    Brands    Cooperative Purchasing    Our Services    Our Work    Articles & Information**

### Room Dividers & Portable Partitions

Cubicles & Panel Systems

Partitions & Display Panels

Portable Health & Safety Room Dividers

**Portable Room Dividers**

Preschool Partitions

Room Divider Accessories

Wall-Mounted Room Dividers

### Promotions

On Sale

Ships in 24

Clearance

### Room Type

Infant & Toddler Room

Preschool Classroom

Elementary Classroom

Middle/High School Classroom

Cafeteria & Food Service

Hallway & Common Area

Library & Media Center

### Categories

Chairs

Desks

Tables

AV Equipment

Classroom Rugs

Dry Erase Boards & Whiteboards

Bulletin Boards & Letter Boards

View More

Portable Room Dividers **Buying Guide**

Home  /  Room Dividers & Portable Partitions  /  Portable Room Dividers  /  6' 2" H Healthy Safeguard Clear Room Divider  /  One Panel (3' 4" L)



 

Norwood Commercial Furniture

**6' 2" H Healthy Safeguard Clear Room Divider - One Panel (3' 4" L)**

★★★★★    Write a review    Post a question    Start a Live Chat

- Provides an unobstructed view of a room or area.
- Separates room but still keeps people connected.
- Easy to move with locking wheels.

**$629.88**

MSRP: ~~$1,325.00~~

You Save: $695.12 (52%)

SKU: NOR-CRD1

Calculate Shipping

On Sale

Share: ✉️ 📌

**Select Options:**

| Number of Panels: One Panel (3' 4" L) |

| Add a multi-unit connector? |

Quantity:  [ 1 ]

Add to Cart

---

Specifications | **Description** | Product PDFs

| | | Similar Items | You May Also Like | Recently Viewed |

| Number of Panels: | 1 |
| Panel Material: | Acrylic |
| Frame Material: | Aluminum channel frame w/ black anodized finish |
| Hinges: | Full length, position-control |
| Casters: | 3" rubber swivel casters (locking) |
| Other Info: | Made in the USA Compatible with wet erase and liquid chalk markers |
| Warranty: | 3-year |
| Storage Dimensions: | 28" W x 40" D |
| Length: | 3' 4" |
| Height: | 6' 2" |
| Product Weight (Lbs): | 55 |
| Assembly: | Ships Assembled (Large QTY orders, some assembly is |

Screenflex
**Simplex Divider - Promo**
$449.88 - $589.88

Screenflex
**Simplex Divider**
$462.99 - $612.99

Norwood Commercial Furniture
**Norwood Series Single-Pedestal Desk**
$731.99 - $745.99

Norwood Commercial Furniture
**Norwood Series Flipper Hutch**
$547.99 - $588.99

---

★★★★★

| Search topics and reviews 🔍 | 0 **Reviews** | 9 **Questions** | 9 **Answers** |

## Questions

Post a question

1–9 of 9 Questions                    Sort by: Most helpful answers ▾

**Louise** · 2 days ago

**Can the panel be order in custom size.**

1 answer

Need help? Call us. 1-800-260-2776 / Live Chat / Email Us ( M-F: 8-7 Eastern )

School Outfitters is open and available to help you. We have inventory in stock and ready to ship.

Account Track Order Cart

Products | Room Designs | Brands | Cooperative Purchasing | Our Services | Our Work | Articles & Information

Home > Room Dividers & Portable Partitions > Portable Room Dividers > 6' 2" H Healthy Safeguard Clear Room Divider > Three Panels (10' L)

**Room Dividers & Portable Partitions**
- Cubicles & Panel Systems
- Partitions & Display Panels
- Portable Health & Safety Room Dividers
- **Portable Room Dividers**
- Preschool Partitions
- Room Divider Accessories
- Wall-Mounted Room Dividers

**Promotions**
- On Sale
- Ships in 24
- Clearance

**Room Type**
- Infant & Toddler Room
- Preschool Classroom
- Elementary Classroom
- Middle/High School Classroom
- Cafeteria & Food Service
- Hallway & Common Area
- Library & Media Center

**Categories**
- Chairs
- Desks
- Tables
- AV Equipment
- Classroom Rugs
- Dry Erase Boards & Whiteboards
- Bulletin Boards & Letter Boards

**View More**

Portable Room Dividers
**Buying Guide**

Norwood Commercial Furniture

## 6' 2" H Healthy Safeguard Clear Room Divider - Three Panels (10' L)

★★★★★ Write a review Post a question Start a Live Chat

- Provides an unobstructed view of a room or area.
- Separates room but still keeps people connected.
- Easy to move with locking wheels.

**$1,640.99**

MSRP: ~~$3,641.00~~

You Save: $2,000.01 (55%)

SKU: NOR-CRD3

Calculate Shipping

On Sale

Share:

**Select Options:**

Number of Panels: **Three Panels (10' L)**

Quantity: 1

Add to Cart

Specifications | Description | Product PDFs

| | |
|---|---|
| Number of Panels: | 3 |
| Panel Material: | Acrylic |
| Frame Material: | Aluminum channel frame w/ black anodized finish |
| Hinges: | Full length, position-control |
| Casters: | 3" rubber swivel casters (locking) |
| Other Info: | Made in the USA Compatible with wet erase and liquid chalk markers |
| Warranty: | 3-year |
| Storage Dimensions: | 28" W x 40" D |
| Length: | 10' |
| Height: | 6' 2" |
| Product Weight (Lbs): | 120 |
| Assembly: | Ships Assembled (Large QTY orders, some assembly |

Similar Items | You May Also Like | Recently Viewed

Screenflex
Simplex Divider - Promo
**$449.88 - $589.88**

Screenflex
Simplex Divider
**$462.99 - $612.99**

Norwood Commercial Furniture
Norwood Series Single-Pedestal Desk
**$731.99 - $745.99**

Norwood Commercial Furniture
Norwood Series Flipper Hutch
**$547.99 - $588.99**

★★★★★

Search topics and reviews

| 0 Reviews | 9 Questions | 9 Answers |
|---|---|---|

# Questions

Post a question

1–9 of 9 Questions

Sort by: Most helpful answers

**Louise** · 2 days ago

**Can the panel be order in custom size.**

1 answer



# Exhibit D

Trial Protocol Order

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **NO. 3:19-CR-245-M** |
| | § | |
| **TIMOTHY BERNARD TANNER,** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER REGARDING PROTOCOLS FOR JURY SELECTION AND TRIAL

The Court held a hearing on May 27, 2020, to discuss jury selection and trial protocols. This Order formalizes the protocols discussed at that hearing.

Jury selection will occur in the jury room of the Earle Cabell Federal Building.[1]  The Court sent detailed juror questionnaires to potential jurors.  As discussed at the hearing, the parties conferred and agreed to excuse many of the jurors in advance of *voir dire*, thus minimizing the number of people who will need to appear in person.  The remaining jurors appearing in person will be spaced to maintain at least six feet of distance between each person. To facilitate that spacing, the jurors will be separated into groups, with one group at a time coming into the jury room for *voir dire* at different scheduled times.  All jurors will wear gloves and face shields during *voir dire*.  All other participants will wear gloves and face shields or masks.

During trial, everyone in the courtroom will wear gloves and face shields or masks, except the witness on the stand.  To testify, witnesses will sit in the jury box, and will be behind

---

[1] The Court offered to conduct jury selection remotely via a web-based platform, making arrangements for any juror who did not have the technological capability to access the platform, but the Defense objected.

a rolling plexiglass screen.  Additional plexiglass screens will be available in the courtroom as necessary.

Witnesses will enter and leave via the jury room to minimize contact with other participants.  The jury will be seated in the gallery, at least six feet apart from one another.[2]  The lectern for counsel will be facing the gallery.  The Court will allow defense counsel to use the interpreter headsets in the courtroom to communicate with the Defendant while maintaining adequate distance between one another.

The jury will take breaks and deliberate in a spacious, nearby courtroom that will allow jurors to remain much more than six feet apart at all times.  Exhibits will not be passed to the jury, but may be displayed on screens throughout the courtroom.  For deliberations, counsel shall provide a computer with nothing on it and a thumb drive containing electronic versions of the exhibits so that the foreperson can display exhibits on a screen as necessary.

**SO ORDERED.**

May 28, 2020.

BARBARA M. G. LYNN
CHIEF JUDGE

---

[2] The Court will also allow spectators to sit in the gallery if it is possible to do so while maintaining six feet of distance between everyone at all times.  If necessary for social distancing, the Court will make another room in the courthouse available for spectators and will simulcast the proceedings to that location.

# Exhibit E

Partial Sequester Order

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | Case Number: 3:19-CR-00245-M |
| | § | |
| TIMOTHY BERNARD TANNER (1), | § | |
| | § | |
| Defendant. | § | |
| | § | |

**<u>ORDER</u>**

It is ORDERED that the jury in the above styled and numbered cause be sequestered from the time they report to the jury room each day until released by the court at the end of each day. This partial sequestration will continue until a verdict is reached and the jury is formally discharged by the court or until further order of the court.

Pursuant to this order, while the jury is kept together and not allowed to separate, the reasonable cost of meals incurred by the jury during court recesses will be paid by the clerk of court in compliance with juror fee regulations issued by the Judicial Conference of the United States.

**SO ORDERED**.

May 31, 2020.

BARBARA M. G. LYNN
CHIEF JUDGE

# Exhibit F

Post-Trial Juror Questionnaires

## POST-TRIAL QUESTIONNAIRE

Name (Optional) _____

1.  Is this your first experience serving as a juror in federal court? _Yes_

    If not, when did you previously serve? _____

2.  What, if anything, should we do to improve generally the experience of jurors in this court?

    _No improvement / very good quality of experience._

3.  Did you like the trial schedule? _Yes_

    If you would have preferred another, what would it have been? _____

4.  Did you take notes during trial? _Yes_

    If so, did you find that helpful? _____

5.  Write 2 or 3 sentences reflecting how you feel about your jury service. _I really_
    _enjoyed listening and learning about jury trials._
    _I felt empowered and learned a lot in a short_
    _period of time. I liked the whole process._

6.  Upon reflection, tell us how you felt about the health and safety measures we employed.
    Should we have done more or less? If you believe we should have done more or less,
    describe specifically all you believe we should have done.

    _You have done a fantastic job of making sure_
    _our health + safety were of concern. You went_
    _above and beyond to be accommodating._

...ase make any other comments or suggestions that you believe would be helpful to the Court, court personnel, the attorneys, and the parties, but DO NOT express particular comments about the result of this case or how you reached your verdict.

The Government Lawyers could have done a lot better job of communicating the issues of the case. The Judge was very helpful & detailed with everything

8.   Would you be willing to be interviewed on a confidential basis by a person not associated with the case about your experiences?   NO

9.   What comments would you care to make to the attorneys about things they could do to improve their trial performance.   The government lawyers could have shown a little more enthusium in presentation. The govnt lawyers could have done better communiating w the jurors

## POST-TRIAL QUESTIONNAIRE

**Name (Optional)** ██████████████

1. Is this your first experience serving as a juror in federal court? _Yes_

   If not, when did you previously serve? _____

2. What, if anything, should we do to improve generally the experience of jurors in this court?

   _Allow bottle of water during the trial_

3. Did you like the trial schedule? _Yes_

   If you would have preferred another, what would it have been? _____

4. Did you take notes during trial? _Yes_

   If so, did you find that helpful? _Yes_

5. Write 2 or 3 sentences reflecting how you feel about your jury service. _____

   _I was honour to serve on the jury. Everyone was respectiful of different opinions_

6. Upon reflection, tell us how you felt about the health and safety measures we employed. Should we have done more or less? If you believe we should have done more or less, describe specifically all you believe we should have done.

   _You and your staff went over & beyond the call of duty to help me feel safe. Thank you for the bottom of my heart. because I was treated fairly by leaders during this pandemic as a essential employee. Thank you again!_

7.  Please make any other comments or suggestions that you believe would be helpful to the Court, court personnel, the attorneys, and the parties, but DO NOT express particular comments about the result of this case or how you reached your verdict.

*Please allow parking for your juror so we don't have to pay. Many were parking*

8.  Would you be willing to be interviewed on a confidential basis by a person not associated with the case about your experiences? *yes*

9.  What comments would you care to make to the attorneys about things they could do to improve their trial performance. *Please collect all evidence to plead your case. Not everyone opinions*

## POST-TRIAL QUESTIONNAIRE

**Name (Optional)** ████████████

1. Is this your first experience serving as a juror in federal court? _Yes_

   If not, when did you previously serve? _____

2. What, if anything, should we do to improve generally the experience of jurors in this court?

   _Nothing, I was very impressed. Thank you._

3. Did you like the trial schedule? _It was fine._

   If you would have preferred another, what would it have been? _____

4. Did you take notes during trial? _Yes._

   If so, did you find that helpful? _Yes_

5. Write 2 or 3 sentences reflecting how you feel about your jury service. _I felt honored to serve. Makes me Proud of our Justice System._

6. Upon reflection, tell us how you felt about the health and safety measures we employed. Should we have done more or less? If you believe we should have done more or less, describe specifically all you believe we should have done.

   _I think the court and Judge went above and beyond to ENSURE the safty of all envolved. Thank you again_

   ████████████

7.  Please make any other comments or suggestions that you believe would be helpful to the Court, court personnel, the attorneys, and the parties, but DO NOT express particular comments about the result of this case or how you reached your verdict.

No comment.
* The lunch lady and our office were VERY kind and helpful.

8.  Would you be willing to be interviewed on a confidential basis by a person not associated with the case about your experiences? _____

9.  What comments would you care to make to the attorneys about things they could do to improve their trial performance. Wear shields when speaking and speak up. We wanted to see their faces.

## POST-TRIAL QUESTIONNAIRE

**Name (Optional)** ███████████

1.  Is this your first experience serving as a juror in federal court? _Yes_

    If not, when did you previously serve? _____

2.  What, if anything, should we do to improve generally the experience of jurors in this court?

    _No  every thing  Was  great_

3.  Did you like the trial schedule? _Yes  i+  Was  nice_

    If you would have preferred another, what would it have been? _____

4.  Did you take notes during trial? _Yes_

    If so, did you find that helpful? _Yes_

5.  Write 2 or 3 sentences reflecting how you feel about your jury service. _____

    _I  liked  the  people  that  I  met  and  the_
    _food  Was  good._

6.  Upon reflection, tell us how you felt about the health and safety measures we employed. Should we have done more or less? If you believe we should have done more or less, describe specifically all you believe we should have done.

    _C  every  thing  Was  oNay._

7.   Please make any other comments or suggestions that you believe would be helpful to the Court, court personnel, the attorneys, and the parties, but DO NOT express particular comments about the result of this case or how you reached your verdict.

_I think every thing was Okay_

8.   Would you be willing to be interviewed on a confidential basis by a person not associated with the case about your experiences? _NO_

9.   What comments would you care to make to the attorneys about things they could do to improve their trial performance.

_NON, every thing was Okay._

## POST-TRIAL QUESTIONNAIRE

**Name (Optional)** [redacted]

1. Is this your first experience serving as a juror in federal court? _Yes_

   If not, when did you previously serve? _____

2. What, if anything, should we do to improve generally the experience of jurors in this court?

   _Everything was perfect._

3. Did you like the trial schedule? _Yes_

   If you would have preferred another, what would it have been? _____

4. Did you take notes during trial? _Yes_

   If so, did you find that helpful? _absolutely_

5. Write 2 or 3 sentences reflecting how you feel about your jury service. _I felt very honored to be here, to do my civic duty. It seems we see the light @ the end of the tunnel._

6. Upon reflection, tell us how you felt about the health and safety measures we employed. Should we have done more or less? If you believe we should have done more or less, describe specifically all you believe we should have done.

   _Everything was handled perfectly._

7. Please make any other comments or suggestions that you believe would be helpful to the Court, court personnel, the attorneys, and the parties, but DO NOT express particular comments about the result of this case or how you reached your verdict.

*A place to smoke during break would be appreciated*

8. Would you be willing to be interviewed on a confidential basis by a person not associated with the case about your experiences? *of course*

9. What comments would you care to make to the attorneys about things they could do to improve their trial performance. 

*Bring more evidence*

## POST-TRIAL QUESTIONNAIRE

**Name (Optional)** _____

1.  Is this your first experience serving as a juror in federal court? _____ Yes _____

    If not, when did you previously serve? _____

2.  What, if anything, should we do to improve generally the experience of jurors in this court?

    _____ Coffee _____

3.  Did you like the trial schedule? _____ Yes _____

    If you would have preferred another, what would it have been? _____

4.  Did you take notes during trial? _____ Yes _____

    If so, did you find that helpful? _____ Yes _____

5.  Write 2 or 3 sentences reflecting how you feel about your jury service. _____ First
    time jury duty, Judge Lynn did an
    exceptional job. I felt safe and comfortable.

6.  Upon reflection, tell us how you felt about the health and safety measures we employed.
    Should we have done more or less? If you believe we should have done more or less,
    describe specifically all you believe we should have done.

    _____ health and safety were exceptional. _____

    _____

    _____

    _____

    _____

7.     Please make any other comments or suggestions that you believe would be helpful to the Court, court personnel, the attorneys, and the parties, but DO NOT express particular comments about the result of this case or how you reached your verdict.

_____

_____

_____

8.     Would you be willing to be interviewed on a confidential basis by a person not associated with the case about your experiences? _____

9.     What comments would you care to make to the attorneys about things they could do to improve their trial performance. _____

the defendant was stopped on suspicion
of DUI but after review of police tape
defendant was not swerving, which is

## POST-TRIAL QUESTIONNAIRE

**Name (Optional)** _____

1.  Is this your first experience serving as a juror in federal court? _____Yes_____

    If not, when did you previously serve? _____

2.  What, if anything, should we do to improve generally the experience of jurors in this court?
    _Every thing was Great - Great Exp._

3.  Did you like the trial schedule? _____Yes_____

    If you would have preferred another, what would it have been? _____

4.  Did you take notes during trial? _____Yes_____

    If so, did you find that helpful? _____Yes_____

5.  Write 2 or 3 sentences reflecting how you feel about your jury service. _Great Duty to serve the Court system. Open my eyes in a New perspective of the Law + its workings_

6.  Upon reflection, tell us how you felt about the health and safety measures we employed. Should we have done more or less? If you believe we should have done more or less, describe specifically all you believe we should have done.

    _Couldn't of had been any better._

7.  Please make any other comments or suggestions that you believe would be helpful to the Court, court personnel, the attorneys, and the parties, but DO NOT express particular comments about the result of this case or how you reached your verdict.

None

8.  Would you be willing to be interviewed on a confidential basis by a person not associated with the case about your experiences?   No.

9.  What comments would you care to make to the attorneys about things they could do to improve their trial performance.   Be better prepared.

## POST-TRIAL QUESTIONNAIRE

**Name (Optional)** ███████████████

1. Is this your first experience serving as a juror in federal court? _NO_

   If not, when did you previously serve? ████████████

2. What, if anything, should we do to improve generally the experience of jurors in this court?

   _Everything was great_

3. Did you like the trial schedule? _Yes_

   If you would have preferred another, what would it have been? _____

4. Did you take notes during trial? _Yes_

   If so, did you find that helpful? _Yes_

5. Write 2 or 3 sentences reflecting how you feel about your jury service. _____

   _I Feel Great to Serve as a Jury Duty._
   _I Enjoy to be part of a great Jury Group._

6. Upon reflection, tell us how you felt about the health and safety measures we employed. Should we have done more or less? If you believe we should have done more or less, describe specifically all you believe we should have done.

   _All of the Safty are great_
   _no issues_

7. Please make any other comments or suggestions that you believe would be helpful to the Court, court personnel, the attorneys, and the parties, but DO NOT express particular comments about the result of this case or how you reached your verdict.

All was great no issue

8. Would you be willing to be interviewed on a confidential basis by a person not associated with the case about your experiences? No issue

9. What comments would you care to make to the attorneys about things they could do to improve their trial performance. It would have been nice to have more evidence, such as DNA and figure prints on

## POST-TRIAL QUESTIONNAIRE

**Name (Optional)** _____

1. Is this your first experience serving as a juror in federal court? ___Yes___

   If not, when did you previously serve? _____

2. What, if anything, should we do to improve generally the experience of jurors in this court?

   _____

3. Did you like the trial schedule? ___Yes – I had no issues with it___

   If you would have preferred another, what would it have been? _____

4. Did you take notes during trial? ___Yes___

   If so, did you find that helpful? ___Yes it was very helpful___

5. Write 2 or 3 sentences reflecting how you feel about your jury service. _____

   I am honoured to have served as a juror
   I have I felt safe and secure

6. Upon reflection, tell us how you felt about the health and safety measures we employed. Should we have done more or less? If you believe we should have done more or less, describe specifically all you believe we should have done.

   The health and safety measures
   employed is were very well organised
   and could not have been any better.

7.  Please make any other comments or suggestions that you believe would be helpful to the Court, court personnel, the attorneys, and the parties, but DO NOT express particular comments about the result of this case or how you reached your verdict.

_____

_____

8.  Would you be willing to be interviewed on a confidential basis by a person not associated with the case about your experiences? _____No_____

9.  What comments would you care to make to the attorneys about things they could do to improve their trial performance. _____

They could bring in more evidence, facts to support their the claim.

## POST-TRIAL QUESTIONNAIRE

**Name (Optional)** ████████

1. Is this your first experience serving as a juror in federal court? _yes_

   If not, when did you previously serve? _____

2. What, if anything, should we do to improve generally the experience of jurors in this court?

   _N/A_

3. Did you like the trial schedule? _yes_

   If you would have preferred another, what would it have been? _N/A_

4. Did you take notes during trial? _yes_

   If so, did you find that helpful? _video and transcripts_

5. Write 2 or 3 sentences reflecting how you feel about your jury service.

   _I was nervous about the process. After a couple days I felt better._

6. Upon reflection, tell us how you felt about the health and safety measures we employed. Should we have done more or less? If you believe we should have done more or less, describe specifically all you believe we should have done.

   _The judge and the entire staff did a GREAT job. Everything was done w/ our health & safety in mind. JOB well Done!!_

7.    Please make any other comments or suggestions that you believe would be helpful to the Court, court personnel, the attorneys, and the parties, but DO NOT express particular comments about the result of this case or how you reached your verdict.

Thanks for breakfast & lunch. MR. Davis made me feel safe and he was very welcoming.

8.    Would you be willing to be interviewed on a confidential basis by a person not associated with the case about your experiences? _____ Yes

9.    What comments would you care to make to the attorneys about things they could do to improve their trial performance. _____

The state's evidence was TRASH!! It was very clear they were unprepared.
Defense team were very knowledgable and proved their case.
Best of Luck To All.

## POST-TRIAL QUESTIONNAIRE

**Name (Optional)** _____

1.   Is this your first experience serving as a juror in federal court? _yes_____

     If not, when did you previously serve? _____

2.   What, if anything, should we do to improve generally the experience of jurors in this court?

     _Nothing I would suggest to improve on._____

3.   Did you like the trial schedule? _yes_____

     If you would have preferred another, what would it have been? _____

4.   Did you take notes during trial? _yes_____

     If so, did you find that helpful? _the notes were helpful_

5.   Write 2 or 3 sentences reflecting how you feel about your jury service. _I felt that it is important and our civil duty. I appreciated the experience. Thank you!_

6.   Upon reflection, tell us how you felt about the health and safety measures we employed. Should we have done more or less? If you believe we should have done more or less, describe specifically all you believe we should have done.

     _I felt that the health + safety measures that were employed were wonderful! I felt safe in and outside of the courtroom. I believe you all went above and beyond to protect us + others in the court room._

7.  Please make any other comments or suggestions that you believe would be helpful to the Court, court personnel, the attorneys, and the parties, but DO NOT express particular comments about the result of this case or how you reached your verdict.

    N/A

8.  Would you be willing to be interviewed on a confidential basis by a person not associated with the case about your experiences?   No

9.  What comments would you care to make to the attorneys about things they could do to improve their trial performance.  I believe not talking monotone and actually having emotion behind their voice. ~~~~~~~~~~

## POST TRIAL QUESTIONNAIRE

**Name (Optional)** ███████████████

1.  Is this your first experience serving as a juror in federal court? _____ Yes _____

    If not, when did you previously serve? _____

2.  What, if anything, should we do to improve generally the experience of jurors in this court?

    Thought everything went well, I felt comfortable.

3.  Did you like the trial schedule? It was good

    If you would have preferred another, what would it have been? _____

4.  Did you take notes during trial? Yes

    If so, did you find that helpful? Yes

5.  Write 2 or 3 sentences reflecting how you feel about your jury service. I have a lot
    of self pride in being able to perform this civil duty. I
    am grateful for this experience that I can use in my
    classroom.

6.  Upon reflection, tell us how you felt about the health and safety measures we employed.
    Should we have done more or less? If you believe we should have done more or less,
    describe specifically all you believe we should have done.

    Health and safety measures were above and
    beyond what I would have needed to feel
    comfortable. Very grateful for the face shield,
    I do not like the masks

7. Please make any other comments or suggestions that you believe would be helpful to the Court, court personnel, the attorneys, and the parties, but DO NOT express particular comments about the result of this case or how you reached your verdict.

_____ *N/A* _____

_____

_____

8. Would you be willing to be interviewed on a confidential basis by a person not associated with the case about your experiences? ___ *Yes* _____

9. What comments would you care to make to the attorneys about things they could do to improve their trial performance. _____

_____ *Having factual evidence will make or break a case.* _____

_____